IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FOREST GUARDIANS,**

   **Plaintiff,**

v.                 CIV. No. 02-749 JP/LFG-ACE

**UNITED STATES BUREAU OF RECLAMATION,
and UNITED STATES ARMY CORPS OF
ENGINEERS,**

   **Defendants,**

**and**

**STATE OF NEW MEXICO,**

   **Defendant-Intervenor.**

## MEMORANDUM OPINION AND ORDER

   On November 18, 2002, Defendants United States Bureau of Reclamation ("BOR") and the United States Army Corps of Engineers (the "Corps") filed a "Motion to Dismiss Plaintiff's Fifth Cause of Action (Alleged Violation of NEPA)" (Doc. No. 24). On December 20, 2002, Plaintiff filed a "Motion for Leave to File First Amended Complaint" (Doc. No. 28). Having considered the briefs, Plaintiff's proposed amended complaint, and the relevant case law, this Court will grant Plaintiff's motion to amend its complaint and deny Defendants' motion to dismiss as moot.

I.     **Background**

The following factual allegations are presented in the light most favorable to Plaintiff.  See Morse v. Regents v. University of Colorado, 154 F.3d 1124, 1126-1127 (10th Cir. 1998) (resolving all reasonable inferences in plaintiff's favor in reviewing motion to dismiss).

The Pecos bluntnose shiner is a fish species listed as threatened under the Endangered Species Act ("ESA") in 1987.  The only remaining populations of the Pecos bluntnose shiner are located in certain segments of the Pecos River in New Mexico.  On February 20, 1987, the United States Fish and Wildlife Service formally designated critical habitat for the Pecos bluntnose shiner in two discontinuous stretches of the Pecos River.  The upper stretch of critical habitat extends from 10 miles south of Fort Sumner to the De Baca-Chaves County Line.  The lower stretch of critical habitat extends from near Hagerman to Artesia.  The stretch of river in between the two sections of critical habitat, known as the quality reach, extends from the lower end of the upper critical habitat to the Acme Gauge.  The quality reach is an important habitat for the Pecos bluntnose shiner as it contains high numbers of the species.

The BOR and the Corps (collectively, the "Federal Defendants") own and operate a series of four dams and three reservoirs on the Pecos River.  The operation of all four dams permits almost total flow-control in the Pecos River from Santa Rosa, New Mexico, downstream to the New Mexico-Texas border.  Except for the Fort Sumner Diversion Dam, these facilities are known as the Carlsbad Project.  The Secretary of Interior authorized the construction of the Carlsbad Project in 1905. Construction of the first dam on the Pecos River, Sumner Dam, was completed in 1937; Fort Sumner Diversion Dam was built in 1951; Santa Rosa Dam was authorized in 1954; and the last dam, Brantley Dam, was completed in 1989.  Brantley Dam is

located downstream from the Sumner and Santa Rosa Dams.  The Federal Defendants operate their Pecos River facilities by making block releases of large volumes of water from Santa Rosa Lake and Sumner Lake downstream to Brantley Lake.  Between block releases, the Pecos River experiences dry periods where the only flow between Sumner Lake and Brantley Lake is return flow from the Fort Sumner Irrigation District and inflows from unregulated tributaries.

On June 27, 2002, Plaintiff Forest Guardians, an environmental organization, filed suit against the Federal Defendants, challenging their operations of the Pecos River dams and reservoirs.  Plaintiff's first four causes of action alleged various violations of the ESA relating to the effects of the Federal Defendants' operations of the Pecos River facilities on the Pecos bluntnose shiner.[1]  Plaintiff's fifth cause of action asserts that the Federal Defendants' failure to prepare an Environmental Impact Statement ("EIS") that analyzes the environmental effects of the Federal Defendants' Pecos River operations constitutes a violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332.

On November 18, 2002, the Federal Defendants filed a motion to dismiss Plaintiff's fifth cause of action based on lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted (Doc. No. 24).  The Federal Defendants contend that Plaintiff's NEPA cause of action is barred by the six-year statute of limitations for claims against the United States. The Federal Defendants argue that Plaintiff did not allege in its complaint a major federal action, as required by NEPA, that occurred within six years of Plaintiff's filing of the complaint. Accordingly, the Federal Defendants urge that Plaintiff's NEPA claim should be dismissed.

---

[1] On February 14, 2003, the parties entered into a "Stipulation of Dismissal of Pending ESA Claims" (Doc. No. 39), dismissing the First, Second, Third, and Fourth Causes of Action in Plaintiff's original complaint.

In response, on December 20, 2002, Plaintiff filed a motion requesting leave to file an amended complaint under FED. R. CIV. P. 15(a) (Doc. No. 28). Plaintiff's proposed amended complaint contains eight additional paragraphs, which allege that the Federal Defendants' operation of the Pecos River dams and reservoirs underwent significant changes in 1998. Pl.'s Mot. (Doc. No. 28), Ex. 1 ¶¶ 35-42. In Plaintiff's proposed amended complaint, Plaintiff asserts that the biological assessment ("BA") for the 1998-1999 winter season required the Federal Defendants to "bypass inflows into Sumner Dam 'to achieve an average targeted flow between 30-35 cubic feet per second at the Acme gaging station during the 1998-1999 winter operations.'" Id. ¶ 36. Similarly, Plaintiff contends in its proposed amended complaint that the BA for the 1999 irrigation season calls for the Federal Defendants "to bypass inflows to target a minimum base flow at the Acme gage and to minimize the number, frequency, and duration of block releases to Brantley Reservoir." Id. ¶ 38. According to Plaintiff's proposed amended complaint, the Federal Defendants admit that the 1998 changes, which have continued in roughly the same manner since 1998, constitute a "substantial shift" in the way the Federal Defendants have traditionally operated Sumner Dam. Id. ¶¶ 38 and 41. Finally, Plaintiff alleges in its proposed amended complaint that the Federal Defendants' current manner of operating the Pecos River dams and reservoirs "has environmental effects that are significantly different from the environmental effects of [the Federal Defendants'] pre-1998 operation of the Pecos River facilities." Id. ¶ 42. Plaintiff requests an order requiring the Federal Defendants to prepare an EIS that analyzes the effects of their Pecos River operations. Id. at 22, ¶ 10.

II.     **Discussion**

The Federal Defendants contend that Plaintiff's fifth cause of action should be dismissed because Plaintiff failed to allege any major federal action that occurred within the six-year statute of limitations for claims against the United States. Plaintiff agrees with the Federal Defendants that the six-year statute of limitations period, set forth in 28 U.S.C. § 2401(a), applies to Plaintiff's NEPA claim. Pl.'s Resp. (Doc. No. 27) at 4-5. Plaintiff also concedes that NEPA cannot be applied retroactively to projects completed before the effective date of the Act (January 1, 1970), and that NEPA only applies to ongoing projects that are undergoing substantial or significant changes which themselves amount to a major federal action. Id. Furthermore, Plaintiff agrees with the Federal Defendants that the federal action that triggers the requirements of NEPA must occur within the six years preceding the filing of the NEPA claim. Id. at 5. Since Plaintiff filed its complaint on June 27, 2002, in order for Plaintiff to avoid Section 2401(a)'s jurisdictional bar, Plaintiff's NEPA claim had to accrue on or before June 27, 1996. Plaintiff, however, contends that the Federal Defendants' modifications in operations of their Pecos River facilities in 1998, as alleged in Plaintiff's proposed amended complaint, occurred within the statute of limitations period and triggered NEPA's requirements. Plaintiff thus argues that its proposed amended complaint alleges a NEPA cause of action sufficient to withstand a motion to dismiss.

As Plaintiff's response to the Federal Defendants' motion to dismiss relies almost exclusively on the adequacy of the additional allegations in Plaintiff's proposed amended complaint, the Court's decision on whether to grant the Federal Defendants' motion to dismiss necessarily depends on whether the Court will allow Plaintiff's proposed amendment. The

5

resolution of both motions, therefore, hinges on whether Plaintiff should be permitted to amend its complaint.

Rule 15(a) states in relevant part that a party may amend its pleadings only by leave of court, and leave shall be freely given when justice so requires. FED. R. CIV. P. 15(a). Leave to amend should be granted unless the party opposing the motion has made a showing of undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, futility of amendment, or undue prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962). The grant or denial of a motion to amend under FED. R. CIV. P. 15(a) is within the sound discretion of the trial court. Id.

Plaintiff filed its motion to amend seeking to "clarif[y] that the NEPA claim in this lawsuit arises from [the Federal Defendants'] 1998 decision to implement substantial modifications in the operations of the Pecos River dams and reservoirs." Pl.'s Mot. (Doc. No. 28) at 3. The Federal Defendants contend that Plaintiff's motion to amend should be denied because Plaintiff's amendment is futile, untimely, and prejudicial.

      A.    **Futility**

A proposed amendment is futile if the amended complaint would be subject to dismissal. Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs. Inc., 175 F.3d 848, 859 (10th Cir. 1999). A complaint may be subject to dismissal under FED. R. CIV. P. 12(b)(1) based on the court's "lack of jurisdiction over the subject matter" or under FED. R. CIV. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." In reviewing a FED. R. CIV. P. 12(b)(1) or 12(b)(6) motion to dismiss, the court must accept the factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse, 154 F.3d at

1126-1127 (Rule 12(b)(6) standard); Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002) (Rule 12(b)(1) standard for facial attack on sufficiency of complaint).  Pleadings need only give a defendant notice of the nature of the claims against the defendant.  Morse, 154 F.3d at 1127. "Dismissal under Rule 12(b)(6) is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  Id. (internal quotations omitted).  Dismissal is only appropriate if the plaintiff can prove no set of facts in support of the claim for relief.  Bauchman v. West High Sch., 132 F.3d 542, 550 (10th Cir. 1997).

To establish a NEPA claim, a plaintiff must allege facts that demonstrate (1) a major federal action that (2) may significantly affect the environment.  42 U.S.C. § 4332(2)(C); Columbia Basin Land Protection Ass'n v. Schlesinger, 643 F.2d 585, 597 (9th Cir. 1981).  Here, the Federal Defendants argue that Plaintiff's proposed amended fifth cause of action is subject to dismissal for failure to state a claim or for lack of jurisdiction because (1) Plaintiff failed to clearly define a major federal action committed by the Federal Defendants within the six years preceding Plaintiff's filing of the complaint, and (2) Plaintiff neglected to assert with specificity the significant effects on the environment caused by the Federal Defendants' alleged major federal action that occurred within the statute of limitations period.

      1.    **Major federal action**

The Federal Defendants claim that Plaintiff's proposed amended fifth cause of action is subject to dismissal because that cause of action continues to define the major federal action triggering NEPA as the change in all Pecos River operations, not just the 1998 modifications in operations.  The Federal Defendants claim that, because the fifth cause of action refers to all

Pecos River operations, the Federal Defendants would have to produce a massive Administrative Record on the operations of all Pecos River facilities dating as far back as 1905. The Federal Defendants argue that Plaintiff's proposed amended fifth cause of action is too broad in scope to state a cognizable NEPA claim, and thus, is subject to dismissal.

Rule 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must simply give the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Plaintiff has met the notice pleading standard in this case. Plaintiff's proposed amended complaint asserts that the 1998 modifications of the Pecos River operations constitute a "significant" and "substantial" departure from the way the Pecos River dams and reservoirs had been operated. Pl.'s Mot. (Doc. No. 28), Ex. 1 ¶¶ 35, 38, and 41. Specifically, Plaintiff's proposed amended complaint alleges that during the 1998-1999 winter season, flows into Sumner Dam were bypassed in order to achieve a target flow rate of 30-35 cubic feet per second ("cfs") at Acme Gauge. Id. ¶ 36. Plaintiff also asserts that flows were bypassed during the 1999 irrigation season to target a minimum base flow at Acme Gauge and that block releases to Brantley Reservoir were minimized in number, frequency, and duration. Id. ¶ 38. Further, Plaintiff states that, beginning in 1998, the Federal Defendants began bypassing inflows in order to target a 35 cfs flow at the Acme Gauge for the purpose of securing habitat for the Pecos bluntnose shiner. Id. ¶ 41.

These factual allegations are specific enough to narrow the scope of Plaintiff's complaint so as to give the Federal Defendants fair notice of what Plaintiff's NEPA claim is and the grounds upon which it rests.  Moreover, the six-year statute of limitations period, which restricts Plaintiff from obtaining relief for any NEPA claim that may have accrued before June 27, 1996, will necessarily limit the proof needed to support or refute Plaintiff's fifth cause of action to evidence regarding any substantial changes in ongoing operations on the Pecos River within the six years preceding Plaintiff's filing of the complaint.  Hence, the Federal Defendants' concerns about having to produce a massive administrative record for all Pecos River operations from 1905 to the present are unjustified.

Moreover, Plaintiff's factual allegations provide sufficient evidence of a "major federal action" that occurred within the six years preceding Plaintiff's filing of the complaint.  The allegations demonstrate that the 1998 modifications in operations of the Pecos River facilities constituted a change in the status quo.  Plaintiff's assertions in the proposed amended complaint that the flow changes were instituted to protect the Pecos bluntnose shiner show that the 1998 changes were not within the contemplation of the original project or merely part of a routine management plan.  Therefore, this Court cannot say as a matter of law that the Federal Defendants' 1998 modifications in operations of their Pecos River facilities do not constitute "major federal actions" beyond the scope of their normal operations.  See Westlands Water Dist. v. U.S. Dept. of Interior, 850 F.Supp. 1388, 1415 (E.D.Cal. 1994) (holding that reallocation of Central Valley Project water to environmental purposes was sufficient evidence that reallocation was major federal action under NEPA).

As to the Federal Defendants' argument that Plaintiff's new allegations pertain only to some modifications in operations at Sumner Dam, and thus, are inadequate to support a NEPA claim encompassing all operational aspects of all Pecos River dams and reservoirs, this Court finds that Plaintiff has alleged enough specific facts in its proposed amended complaint to support its claim that significant changes in operations occurred in 1998 at all the Pecos River facilities. See Pl.'s Mot. (Doc. No. 28), Ex. 1 at ¶ 2 (operation of four dams permits almost total flow-control), ¶ 21 (same), ¶ 22 (block releases are made from Santa Rosa Lake and Sumner Lake downstream to Brantley Lake), ¶ 35 (operations of Pecos River facilities underwent significant change in 1998), ¶ 38 (block releases to Brantley Reservoir minimized), and ¶ 41 (changes in operations at Pecos River facilities).  Furthermore, if the evidence demonstrates that changes were not made in operations at all four Pecos River dams and all three reservoirs in 1998, then summary judgment motions can be used to restrict Plaintiff's NEPA cause of action to fit the evidence.

In sum, at this point in the proceedings, when all inferences must be drawn in favor of Plaintiff, this Court concludes that Plaintiff's proposed amended complaint sufficiently sets forth factual allegations of a "major federal action" for purposes of NEPA that occurred within the six years preceding Plaintiff's filing of the complaint.

2. **Significant effects to the environment**

The Federal Defendants next argue that allowing Plaintiff to amend its complaint would be futile because Plaintiff's proposed amended complaint fails to allege with specificity the significant environmental effects caused by the Federal Defendants' 1998 changes in operations at the Pecos River facilities.  Plaintiff alleges the following in its proposed amended complaint: "The current

10

manner of operating [the Federal Defendants'] Pecos River dams and operations . . . has environmental effects that are significantly different from the environmental effects of [the Federal Defendants'] pre-1998 operation of the Pecos River facilities." Pl.'s Mot. (Doc. No. 28), Ex. 1 ¶ 42. The Federal Defendants argue that this allegation is too conclusory to survive a motion to dismiss.

This Court disagrees. At the motion to dismiss stage, a court will presume that the general allegations in the complaint embrace the specific facts necessary to support the claim. State of Utah v. Babbitt, 137 F.3d 1193, 1204 (10th Cir. 1998) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)); see also Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984) ("All reasonable inferences must be indulged in favor of the plaintiff, and the pleadings must be liberally construed.") (citations omitted). Thus, this Court must presume that Plaintiff's allegation that the 1998 changes in Pecos River operations caused significantly different environmental effects encompasses the specific facts necessary to support that claim.

Therefore, this Court concludes that allowing Plaintiff to amend its complaint would not be futile, as Plaintiff has alleged sufficient facts, as required by NEPA, to demonstrate a major federal action that may significantly affect the environment.

B.  **Timeliness and Prejudice**

The Federal Defendants also contend that Plaintiff's motion to amend its complaint should be denied because the motion is untimely and the amendment would prejudice the Federal Defendants.

A court may deny leave to amend a complaint based on untimeliness alone. Viernow v. Euripedes Dev. Corp., 157 F.3d 785, 799 (10th Cir. 1998); Las Vegas Ice and Cold Storage Co.,

11

893 F.2d 1182, 1185 (10th Cir. 1990). Here, Plaintiff moved to amend its complaint a mere one month after the Federal Defendants filed their motion to dismiss. Plaintiff did not wait until after the Court ruled on the Federal Defendants' motion to dismiss before filing its motion to amend. Instead, Plaintiff evaluated the strength of the Federal Defendants' statute of limitations argument and, shortly thereafter, moved to amend Plaintiff's complaint. Plaintiff's timely actions enabled the Court to examine the Federal Defendants' motion to dismiss and Plaintiff's motion to amend at the same time, conserving the Court's time and resources. Furthermore, Plaintiff did not wait until after the Administrative Record had been produced before moving to amend its complaint. Therefore, this Court determines that Plaintiff did not act untimely in filing its motion to amend its complaint a mere one month after the Federal Defendants filed their motion to dismiss.

The Federal Defendants have also not demonstrated that they would be prejudiced by allowing Plaintiff to file its proposed amended complaint. The only prejudice asserted by the Federal Defendants is the time and resources spent in preparing their motion to dismiss. It is apparent from the Federal Defendants' briefs, however, that the Federal Defendants believe Plaintiff's proposed amended complaint fails to state a claim. Thus, it is likely that the Federal Defendants would have filed a motion to dismiss regardless of whether Plaintiff's original complaint contained the same allegations as Plaintiff's proposed amended complaint. Therefore, this Court concludes that the Federal Defendants would not be unduly prejudiced by Plaintiff's amendment.

III.   **Conclusion**

Examining Plaintiff's proposed amended complaint in the light most favorable to Plaintiff, this Court concludes that Plaintiff's proposed amended complaint sufficiently alleges facts that

demonstrate that the Federal Defendants' 1998 modifications in Pecos River operations constitute a major federal action that significantly affects the environment. As the 1998 changes in Pecos River operations fall within the six-year statute of limitations period, it would not be futile for the Court to grant Plaintiff leave to file its proposed amended complaint. Additionally, this Court determines that Plaintiff's proposed amended complaint is not untimely or unduly prejudicial. Therefore, mindful that Rule 15(a) commands that "leave [to amend] shall be freely given when justice so requires," this Court will grant Plaintiff leave to file its first amended complaint.[2] Accordingly, the Federal Defendants' motion to dismiss should be denied as moot.

IT IS THEREFORE ORDERED that:

1.  The Federal Defendants' Motion to Dismiss Plaintiff's Fifth Cause of Action (Alleged Violation of NEPA) (Doc. No. 24) is DENIED as moot; and

2.  Plaintiff's Motion for Leave to File First Amended Complaint (Doc. No. 28) is GRANTED.

*[signature: James A. Parker]*
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] This Court assumes that the first four causes of action in Plaintiff's original complaint, which were dismissed on February 14, 2003, according to the "Stipulation of Dismissal of Pending ESA Claims" (Doc. No. 39), will not be part of Plaintiff's first amended complaint.